UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACK YETIV, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civ. No. 4:11-cv-01250 |
| | § | |
| CHASE HOME FINANCE LLC, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim, and in the Alternative, Motion for a More Definite Statement ("Motion"). (Doc. No. 12.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that the Motion must be **GRANTED.**

### I.     BACKGROUND

In October 2002, Jack Yetiv ("Yetiv") refinanced his property at 350 Allen Road, Woodside, California, by executing a note in favor of Washington Mutual Bank, F.A. ("WAMU"), in the principal amount of $1,360,000 (the "Note"). (Am. Compl. ¶ 5.) The Note was secured by a Deed of Trust ("DOT"), executed on the same day. (*Id.*)  In 2008, Yetiv received a notice instructing him to issue his monthly payments to a different company, Chase Home Finance LLC ("Chase" or "Defendant"). (*Id.* ¶ 6.) Although Yetiv initially complied with this request, he contacted Chase in March 2011 to request that Chase send him documents confirming that Chase owned the mortgage on the property. (*Id.* ¶ 7.) According to Yetiv, he needed this information in order to ensure that he would

1

not be making a payoff to the wrong company, and to ensure that the release of the lien he would receive would come from the company that actually owned the debt. (*Id.*) In response, Chase sent Yetiv a copy of the original Note and DOT that Yetiv had executed in favor of WAMU—neither of which indicated that Chase was the owner or beneficiary of the Note. (*Id.* ¶ 8.) Yetiv thereafter contacted Chase, and was told he should place a request with Chase's Research Department. (*Id.*) In response to Yetiv's request to the Research Department, however, Chase simply sent Yetiv additional copies of the original Note and DOT, as well as some payment history, none of which demonstrated that Chase owned the debt. (*Id.* ¶ 9.) Yetiv's repeated requests to speak with a supervisor or higher-level manager in the Research Department were denied. (*Id.* ¶ 10.)

In March 2011, Yetiv sent, through outside counsel, two letters to Chase. (*Id.* ¶ 11.) The first letter requested "the name, address, and telephone number of the owner of the promissory note" pursuant to § 131(f) of the Truth-in-Lending Act, 15 U.S.C. § 1641(f)(2) ("TILA § 131(f)"). (*Id.*) The second letter was a Qualified Written Request ("QWR") under § 6(e) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), requesting additional information about the Note, including a copy of the pooling and servicing agreement and information regarding the owner of the Note. (*Id.* ¶ 13.) Chase's response failed to identify either itself or any other entity as the owner or master servicer of the Note. (*Id.* ¶ 15.)

Anticipating imminent sale of the property, Yetiv filed suit against Chase in state district court. Yetiv closed sale on the property in late March 2011. (*Id.* ¶ 16.) As Yetiv was not satisfied that Chase had proven ownership of the debt, however, Yetiv agreed to allow the new buyer ("Buyer") to hold back $1 million of the sales price in a segregated

2

account held by the Buyer, which was sufficient to cover the purported loan balance of $900,000. (*Id.*) The Buyer has used some of those funds to make monthly payments to Chase of approximately $5000 per month. (*Id.* ¶ 17.)

In a conversation later that month, a Chase attorney agreed to obtain the original Note, original DOT, and any other documents that would support the conclusion that Chase owned the debt. (*Id.* ¶ 18.) In this conversation, Yetiv indicated that he would be willing to dismiss the lawsuit and pay off the loan if Chase could prove to his satisfaction that it owned the debt. (*Id.*) However, the Chase attorney later confirmed that no originals of the Note or DOT had been found, and that he had no documents to prove Chase's ownership of the debt. (*Id.* ¶ 19.) More recently, the Chase attorney indicated that he did in fact have an original copy of the WAMU Note, but no documents to prove Chase's ownership of the debt. (*Id.*) At this time, the Chase attorney sent Yetiv a second version of the Note which, unlike the prior copies of the Note, carried an undated endorsement in blank. (*Id.* ¶ 19.) In April, Chase sent Yetiv a letter indicating that it had forced-placed insurance on the property. (*Id.* ¶ 20.) According to Yetiv, "[s]ince then, Chase has unilaterally increased the monthly payment so as to cover the exorbitant and unconscionable cost (approximately 5 times what Yetiv was paying for insurance when he owned the property!) of the force-placed [sic] insurance." (*Id.*)

Chase removed the case to this Court in April 2011. (*Id.* ¶ 12.) Chase moved to dismiss Yetiv's Original Complaint. (Doc. No. 4.) As Yetiv is proceeding *pro se*, the Court ordered Yetiv to file an Amended Complaint. (Doc. No. 10.) Yetiv then filed his "Original Federal Complaint after Removal and Demand for Jury Trial" (the "Amended Complaint"). In the Amended Complaint, Yetiv alleges that Chase is not the actual holder

3

of the Note and is therefore not the party to whom payments and the payoff should be made. (*Id.* ¶ 23.) Instead, Yetiv contends that Chase is simply the servicer on the debt. (*Id.*) Yetiv reaches this conclusion because he has only received the original WAMU Note and DOT in response to his repeated requests for proof that Chase is the holder of the Note, with the exception of a single endorsed-in-blank version of the Note, which only appeared after Yetiv sued Chase. (*Id.* ¶ 23.) Yetiv further believes that WAMU may have sold the loan in a securitized transaction, in which case any pay-off of the Note and DOT are not due and owing to Chase. (*Id.* ¶ 24.) Furthermore, Yetiv avers, Chase's responses to his TILA and RESPA letters constitute representations that Chase is the holder of the Note; if this is not true, Chase has provided him with misleading representations of a material fact. (*Id.* ¶ 25.) Yetiv also claims that Chase did not provide notice that it had become the servicer of the Note, as required by RESPA. (*Id.* ¶ 26.) Yetiv requests declaratory judgment under the Federal Declaratory Judgment Act ("FDJA"), and alleges violations of TILA, RESPA, the Fair Dept Collection Practices Act ("FDCPA"), the Fair Trade Commission Act ("FTCA"), and the Texas Deceptive Trade Practices Act ("TDTPA"). (*Id.* ¶¶ 28-48.)

Chase then filed this Motion arguing that the Amended Complaint fails to assert a viable cause of action or claim by which Yetiv may be entitled to relief. (Mot. Dismiss 2.) Yetiv filed a Response; Chase did not submit a Reply.

## II.   APPLICABLE LAW

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief

4

above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quotations and citations omitted).

### III. ANALYSIS

For the reasons explained below, the Court concludes that all of Yetiv's claims must be dismissed.

#### A. FDJA

The FDJA declares, "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "An actual controversy exists where a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) (internal quotations omitted). Yetiv states that the crux of the controversy in this case is "who holds the Note and what rights the holder has vis-à-vis Yetiv." (Am. Compl. ¶ 33.) In contrast, Chase claims that no actual controversy exists, and therefore Yetiv's request for declaratory judgment must be dismissed. (Mot. Dismiss 5.) Chase points to the following provision of the California Commercial Code:

> (a) Subject to subdivision (b), an instrument is paid to the extent payment is made (1) by or on behalf of a party obliged to pay the instrument, and (2) to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under Section 3306 by another person.
> (b) The obligation of a party to pay the instrument is not discharged under subdivision (a) if either of the following applies: (1) A claim to the instrument under Section 3306 is enforceable against the party receiving payment and (A) payment is made with knowledge by the payor that payment is prohibited by injunction or similar process of a court of competent jurisdiction, or (B) in the case of an instrument other than a cashier's check, teller's check, or certified check, the party making payment accepted, from the person having a claim to the instrument, indemnity against loss resulting from refusal to pay the person entitled to enforce the instrument. (2) The person making payment knows that the instrument is a stolen instrument and pays a person it knows is in wrongful possession of the instrument.

Cal. Com. Code § 3602. A person entitled to enforce an instrument means:

6

> (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

*Id.* § 3301. As the instrument is indorsed in blank, Chase contends, it is payable to the bearer and may be negotiated by transfer of possession alone. (*Id.* 6.) Yetiv does not allege that any other person has made a claim to the instrument, Chase points out; nor has he alleged that he has knowledge of such a claim or knowledge that payment is prohibited by injunction or similar process of a court of competent jurisdiction. (*Id.*) Therefore, Chase explains, Yetiv's obligation will be discharged if he tenders payment to Chase. (*Id.* 6-7.) As a consequence, Chase contends, there is no justiciable controversy. (*Id.* 7.)

Furthermore, there is no real and immediate potential for harm, Chase insists, as it is public knowledge that JPMC acquired substantially all of WAMU's assets in 2008 from the Federal Deposit Insurance Corporation ("FDIC") as receiver. (*Id.*) Furthermore, Chase observes, it is a matter of public record that Chase Home Finance LLC was a wholly-owned subsidiary of Chase Home Finance, Inc., which was a wholly-owned subsidiary of JPMorgan Chase Bank, N.A., and that Chase Home Finance LLC merged into JPMorgan Chase Bank, N.A.[1] (*Id.*) Additionally, Chase points out that Yetiv's

---

[1] The Court takes judicial notice of these facts, which are generally known and/or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). *See Tubin v. Washington Mut. Sav. Bank*, No. 2:09-cv-01905-RLH-RJJ, 2011 WL 5834302, at *1 n.1 (D. Nev. Nov. 17, 2011) (taking judicial notice that WAMU was taken over by the United States Office of Thrift Supervision, which appointed the FDIC as receiver, which in turn sold WAMU and its assets to Chase; *Lemperle v. Washington Mut. Bank*, No. 10cv1550-MMA(POR), 2010 WL 3958729, at *3 (S.D. Cal. Oct. 7, 2010) (taking judicial notice of the September 25, 2008 Order from the Office of Thrift Supervision closing WAMU and appointing the FDIC as Receiver, and the Purchase and Assumption

speculation that WAMU may have sold the loan in a securitized transaction is not supported by any specific factual allegations. (*Id.* 3.)

The Court agrees that, given the above, there is no justiciable controversy or possibility of future injury. Therefore, Yetiv's claim under the FDJA must be dismissed.

### B. TILA

Yetiv states that "Chase has violated the express provisions of TILA by not providing the information regarding the owner or master servicer of the Note." (Am. Compl. ¶ 35.) Specifically, TILA requires that, "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." 15 U.S.C. § 1641(f)(2). Yetiv insists that "[t]he response by Chase provided no basis upon which to believe that Chase is the proper entity to whom a pay-off of the Note should be made," and furthermore states that "Chase failed to comply with the requirements under TILA by failing to identify either itself nor any other entity as the owner or master servicer of the Note." (*Id.* ¶¶ 13, 15.)

Chase argues that Yetiv's claim should be dismissed on the grounds that Yetiv alleges Chase is not the owner of the obligation and is only the servicer, as it is a prerequisite to filing an action for a violation of 15 U.S.C. § 1641(f)(1) that the action be

---

Agreement entered between the FDIC and Chase on September 25, 2008 through which Chase acquired the majority of WAMU's assets and liabilities, because "government reports and publications, including information on the Department of the Treasury and the FDIC's official websites is judicially noticeable"); Ex. A to Doc. No. 14, "Purchase and Assumption Agreement Among FDIC, Receiver of Washington Mutual Bank, and JPMorgan Case Bank, National Association (Dated Sept. 25, 2008)"; Ex. B to Doc. No. 14, "FDIC Press Release: JP Morgan Chase Acquires Banking Operations of Washington Mutual, FDIC Facilitates Transaction that Protects All Depositors and Comes at No Cost to the Deposit Insurance Fund (Dated Sept. 25, 2008)"; Ex. C to Doc. No. 14, "Failed Bank Information: Information for Washington Mutual Bank, Henderson, NV and Washington Mutual Bank, FSB, Park City, UT"; Ex. D to Doc. No. 14, "State of Delaware Certificate of Merger of Chase Home Finance LLC with and Into JPMorgan Chase Bank, National Association (Filed April 27, 2011)."

brought against an assignee of a creditor. (Mot. Dismiss 7.) Yet reading Yetiv's Amended Complaint in the light most favorable to him, Yetiv alleges that Chase has violated TILA even if it is the owner or master servicer of the Note. Nonetheless, earlier in the Amended Complaint, Yetiv undermines his own allegations by stating that "Chase's responses to the TILA and RESPA letters constitute representations that Chase is the holder of the Note." (Am. Compl. ¶ 25.) Moreover, in the letter Chase sent to Yetiv, included as an exhibit to Yetiv's Amended Complaint (Ex. C to Am. Compl), Chase proves its name, address, and telephone number. Therefore, Yetiv has failed to state a claim for a violation of 15 U.S.C. § 1641(f)(2).

### C. RESPA

Yetiv argues that Chase violated RESPA by, first, failing to notify him in writing of any assignment, sale, or transfer of the servicing of his loan, as is required under RESPA § 2605(a)(1). (Am. Compl. ¶ 37.) However, Yetiv states earlier in his Amended Complaint that he "received a notice instructing him to begin to pay his monthly payment to a different company, Chase Home Finance LLC." (*Id.* ¶ 6.) This statement indicates that Yetiv was so notified. Therefore, his claim under RESPA § 2605(a)(1) fails.

Second, Yetiv claims that Chase also violated RESPA by failing to provide the information requested in his QWR. (*Id.* ¶ 38.) A QWR is

> written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). The QWR must be related to the servicing of the loan. *Id.* § 2605(e)(1)(A); *Bittinger v. Wells Fargo Bank NA*, No. H-10-1745, 2011 WL 3568206, at *5 (S.D. Tex. Aug. 15, 2011). RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* § 2605(i)(3). The letter responding to Yetiv's QWR, attached to his Amended Complaint, appears to respond to much of the content of Yetiv's QWR. (Doc. No. 11-3, Ex. C to Am. Compl.) To the extent the letter is non-responsive, it only declines to address questions from Yetiv that were not related to the servicing of the loan. Furthermore, to state a claim for a violation of § 2605(e), Yetiv must allege actual damages resulting from the violation, which he has not done. *Pitre v. U.S. Bank Nat. Ass'n*, No. H-10-1020, 2011 WL 5449767, at *3 (S.D. Tex. Nov. 9, 2011); *Bittinger*, 2011 WL 3568206, at *5; *Caballero v. Wells Fargo Bank, N.A.*, No. 3-11-CV-1385-O-BD, 2011 WL 6039953, at *2 (N.D. Tex. July 25, 2011). Indeed, "simply having to file suit [does not] suffice as a harm warranting actual damages." *Lal v. Am. Home Servicing, Inc.*, 680 F.Supp.2d 1218, 1223 (E.D. Cal. 2010).

### D. FDCPA

Yetiv alleges that Chase violated the FDCPA by asserting rights to payments that are not authorized to be paid to Chase under the Note. (Am. Compl. ¶ 40.) In addition, he argues that "Chase's force-placement of insurance [sic] on the Property despite the fact that Chase's counsel was informed that the Property was insured by the new owner is

10

also a violation of the FDCPA." (*Id.*) 15 U.S.C. § 1692(F)(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." However, the Note provides that "other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment." (Doc. No. 11-4, Ex. D to Am. Compl § 3.) Therefore, Yetiv's claim under § 1692(F)(1) does not survive the Motion to Dismiss.

Yetiv also insists that Chase violated § 1692(e)(8) of the FDCPA, which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Yetiv claims that "Chase has told Yetiv that its handling of this dispute may have adverse consequences to Yetiv's credit rating." (Am. Compl. ¶ 41.) As Chase observes, however, Yetiv has not alleged or presented facts suggesting that Chase in fact communicated or threatened to communicate credit information that it knew, or should have known, to be false. (Mot. Dismiss 9.) Therefore, this claim must be dismissed.

### E. FTCA

Yetiv now agrees with Chase that his FTCA claims should be dismissed. (Resp. to Mot. Dismiss 9.) Therefore, Yetiv's FTCA claims are dismissed.

### F. TDTPA

Yetiv argues that Chase violated the TDTPA's prohibition against "representing that an agreement or lease confers or involves rights, remedies, or obligations which it does not have." Tex. Bus. & Comm. Code §§ 17.46(b)(12). If it is shown that Chase does

not own the debt, Yetiv contends, Chase's actions would constitute a violation of the TDTPA. (Am. Compl. ¶ 46.) Furthermore, Yetiv avers, if Chase in fact owns the debt it has violated the TDTPA by its "unconscionable" conduct of "charging five times as much for insurance as it is worth—after Chase's attorney had been informed that a million dollars was sitting in escrow and that the property was already insured—and refusing to comply with federal statutes requiring it to prove ownership of the debt." (*Id.* ¶ 47.) Chase contends that Yetiv is not a consumer and, therefore, cannot assert claims under the TDTPA.

To recover under the TDTPA, Yetiv must prove that he is a "consumer." *Chapa v. Chase Home Finance LLC*, No. C-10-359, 2010 WL 5186785, at *8 (S.D. Tex. Dec. 15, 2010). To qualify as a consumer under the TDTPA, a party must seek to acquire goods or services by lease or purchase; and the goods or services sought or acquired must form the basis of the party's complaint. *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 133 (Tex.App.-Corpus Christi 2001) (footnotes and citations omitted). Chase cites *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex. 1980), for the proposition that loans of money and extensions of credit are not goods or services under the TDTPA. (Mot. Dismiss 10.) The scope of that decision has been subsequently narrowed, however, *Walker v. F.D.I.C.*, 970 F.2d 114, 123 (5th Cir. 1992), such that a plaintiff "does not lack standing to sue simply because the basis of his complaint is a loan of money he received from [a defendant] to purchase his home," *Chapa*, 2010 WL 5186785, at *8. Specifically, "[a] creditor may be inextricably intertwined in the transaction so as to confer consumer status on a party if the extension of credit forms the means of making the sale or purchase from the buyer's perspective." *Ford*, 44 S.W.3d at 134.

Nonetheless, Yetiv must still "demonstrate [that] his purchase of a home forms the basis of his complaint" and that Chase's "alleged violations of the DTPA 'arose out of' the transaction in which" Yetiv purchased the home. *Id.* at *9 (citations omitted). That requirement is not met here, as Yetiv's allegations are not based on the transaction through which he purchased the home or even the home itself. *See also McCartney v. CitiFinancial Auto Credit, Inc.*, No. 4:10-CV-424, 2010 WL 5834802, at *7 (E.D. Tex. Dec. 14, 2010) ("Plaintiff alleges that the debt in question was for the purchase for an automobile, however Plaintiff alleges no complaint about the automobile itself. Therefore, the court concludes that Plaintiff lacks standing under the DTPA and Plaintiff's DTPA claim should be dismissed."); *Ford*, 44 S.W.3d at 135; *Walker*, 970 F.2d at 123 (finding that plaintiffs were not consumers within the meaning of the DTPA because although they sought to use the loan for the construction of a "Homotel," they alleged no complaint pertaining to the "Homotel" itself).

Even if Yetiv were a consumer, his claim would fail (1) because, as explained above, there is no dispute that Yetiv may tender payment to Chase and his obligation will be discharged, and (2) Chase's conduct does not rise to a level of unconscionability. Specifically, the TDTPA provides that a consumer may file suit where an "unconscionable action or course of action" constitutes a "producing cause" of economic damages. Tex. Bus. & Comm. Code § 17.50(a)(3). An "[u]nconscionable action or course of action" is defined as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5). Notably, "[t]he Texas Supreme Court has interpreted the term 'grossly unfair' in § 17.45(5) of the TDTPA to mean 'glaringly

noticeable, flagrant, complete and unmitigated.'" *Strauss v. Ford Motor Co.*, 439 F.Supp.2d 680, 687 (N.D. Tex. 2006) (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985)). "It is not enough to allege that a defendant 'simply … took unfair advantage' of the consumer." *Id.* (quoting *Chastain*, 700 S.W.2d at 582). Yetiv simply does not plead facts showing unconscionable conduct on the part of Chase. *See, e.g., Craig v. Ameriquest Mortg. Co.*, No. Civ.A. H-04-3929, 2005 WL 2921947, at *5 (S.D. Tex. Nov. 4, 2005) ("Other than [the plaintiff's] unsubstantiated conclusory allegations, nothing before the Court suggests Ameriquest acted unconscionably or made misrepresentations in securing insurance on the property or accelerating the loan because of [plaintiff's] nonpayment. Both acts were authorized under the deed of trust and constituted neither false, misleading or deceptive practices nor unconscionable actions." (internal citations omitted)); *Bennett v. Bank United*, 114 S.W.3d 75, 82 (Tex.App.-Austin 2003) (finding that bank's refusal to discontinue plaintiff's requirement to pay for private mortgage insurance premiums was not unconscionable).

## IV. CONCLUSION

For the reasons explained above, Chase's Motion is **GRANTED**, and Yetiv's claims are **DISMISSED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 11th day of January, 2012.

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**

14